IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MAURILIO NAVARRO-ORNELAS,

Petitioner,

v.

MARK NOOTH,

Respondent.

Civil No. 09-257-MO

OPINION AND ORDER

Robert A. Weppner
Law Offices of Robert A. Weppner
4110 SE Hawthorne Blvd., #127
Portland, Oregon 97214-5246

Attorney for Petitioner

John R. Kroger
Attorney General
Jacqueline Kamins
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

Attorneys for Respondent

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he challenges the legality of his underlying state conviction for Felony Murder with a Firearm. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#22) is denied.

**BACKGROUND**

On November 5, 2003, the remains of Carlos Villareal were discovered on a forest road in Wasco County. Respondent's Exhibit 118, p. 3. When police initially interviewed petitioner, he denied any involvement in Villareal's death. However, he later contacted the police and asked them to return for a second interview. *Id* at 6. The police conducted a second interview of petitioner on May 11, 2004. After police read petitioner his *Miranda* warning in Spanish and after petitioner signed a written waiver, he proceeded to provide authorities with a full confession. *Id* at 3-4.

In his confession, petitioner admitted helping two friends, Romero and Rubalcava, kidnap Villareal. *Id* at 4. He told authorities that Romero handed him a firearm and told him to kill the victim, prompting petitioner to fire three shots at Villareal, all of which missed. *Id*. Petitioner claimed he was not shooting to kill, only to scare the victim. *Id* at 3, 5. When the victim ran away while petitioner was shooting at him, Romero took the firearm from petitioner and the two pursued Villareal. Petitioner

located Villareal, who begged for his life, telling petitioner that Romero was going to kill him. *Id* at 4. Petitioner started walking away, leaving Villareal and Romero (who had claimed the firearm from petitioner) behind. He had traveled approximately ten steps when he heard two shots, which Romero had fired into Villareal's head. *Id* at 4. Romero caught up with petitioner, patted him on the shoulder, and said, "It's done." *Id.*

Petitioner was indicted on eight counts of Aggravated Murder with a Firearm, two counts for Felony Murder with a Firearm, and one count each of Kidnapping in the First Degree, Kidnapping in the Second Degree, and Assault in the Fourth Degree. Respondent's Exhibit 102. Petitioner elected to plead guilty to one count of Felony Murder with a Firearm with a stipulated 25-year sentence. Respondent's Exhibit 103. In exchange, the prosecution dropped the remaining charges.

Petitioner did not take a direct appeal, and proceeded to file for post-conviction relief ("PCR") in Malheur County where the PCR trial court denied relief on all of his claims. Respondent's Exhibit 126. The Oregon Court of Appeals granted the State's motion for summary affirmance, and the Oregon Supreme Court denied review. Respondent's Exhibits 130, 132.

Petitioner filed his Amended Petition for Writ of Habeas Corpus on December 28, 2009 alleging that his trial attorneys failed to render effective assistance in a variety of particulars,

leading to his entry of a guilty plea that was not knowing, voluntary, or intelligent. Specifically, petitioner makes the following allegations:

A. His attorneys led petitioner to believe that upo[n] his plea he was, in fact, going to be given a prison term of a duration of somewhere in the range of ten to fifteen years in prison, although in reality the charge to which he entered his plea of guilty carried an absolute and mandatory minimum term of 25 years, and up to as much as life imprisonment;

B. His attorneys failed to adequately supervise, train and instruct their agents and employees, so that those persons (though not attorneys) gave incorrect legal advice to petitioner, communicated to petitioner about his case independently of the attorneys' communications, exercised undue influence on petitioner that was designed to and did play on his emotions in his decision whether or not to enter a guilty plea, and, insofar as those employees performed translation duties, did so in a way that violated the codes of ethics applicable to court translators;

C. His attorneys failed to explain to petitioner the importance of certain particular facts contained in his statement to police officers in advance of his in-court and under-oath wholesale affirmation of *all* the facts in that statement. Moreover, through their inadequately-supervised employees and agents, trial counsel instructed petitioner to answer questions from the court in the course of submitting his plea in such a way that the plea would be accepted, without regard for the accuracy of those answers, and with indifference to the effect on petitioner's case that those answers would have;

D. His attorneys failed to take care to ensure that they were communicating adequately with petitioner despite the language barrier, so that, when he use the Spanish verb "participar" to indicate that he was merely present a the scene of the crime, they purported to understand him to have told the

police, and to be telling them, that he had actively "participated" in the kidnaping of Carlos Villareal, which active participation would have made him guilty of felony murder; and when his attorneys drafted his plea petition, they further used the word "participate" in his statement of facts to support his plea of guilty, either attempting thereby to influence him to make an inaccurate statement that would support a guilty plea, or in negligent ignorance off the meaning he ascribed to the statement;

E. His attorneys did not move to suppress his statements to the police, despite the fact that the *Miranda* warnings given to him were corrupted and made inadequate and misleading by the detectives' unrecorded extraneous statements to petitioner. Petitioner's statement to the police constituted the great bulk of the evidence against him that the prosecution had; and

F. His attorneys brought undue pressure on petitioner to enter a plea of guilty to felony murder, threatening that he would be "killed" if he did not.

Respondent asks the court to deny relief on the Petition because: (1) most of petitioner's claims are procedurally defaulted; (2) the PCR trial court's decision denying PCR relief on petitioner's fairly presented claims is entitled to deference; and (3) all of petitioner's grounds for relief are meritless.

## DISCUSSION

### I. Exhaustion and Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the

exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In this case, petitioner raised several claims of ineffective assistance of trial counsel to the PCR trial court. Respondent's Exhibit 105. On appeal, he narrowed those claims to the following:

> In this case, counsel failed to ensure that petitioner's plea was knowingly, intelligently, and voluntarily made. In his deposition in the post-conviction proceeding petitioner testified that his trial attorneys "took advantage" of him, threatened him, and otherwise pressured him to sign the plea petition. He added that his attorneys also told him that they would try to negotiate for a 12 to 13 year sentence, and that the first time he head of the 25 year sentence was when the judge told him in court.

Respondent's Exhibit 127, p. 6 (citations to trial record omitted). Petitioner raised the same claims in his Petition for Review. Respondent's Exhibit 131.

It is clear from this record that petitioner's appellate briefing did not include Grounds B, C, D, and E of his habeas Petition. The court concludes that the appellate briefing, did however, sufficiently allege the claims identified in this habeas proceeding as Grounds A and F pertaining to length of sentence and the pressure the attorneys' applied to petitioner. Consequently, petitioner fairly presented Grounds A and F to Oregon's state courts.

Because petitioner may no longer present Grounds B, C, D, and E to Oregon's state courts in a proper procedural context, they are procedurally defaulted. Petitioner has not argued cause and prejudice, nor has he attempted to make a gateway showing of actual

innocence sufficient to excuse the default. Accordingly, only petitioner's Ground A and F claims are properly before this court.

## II. Expansion of the Record

As an initial matter, while petitioner has neither formally moved to expand the record nor requested an evidentiary hearing, he has filed three new Declarations with the court which were not included in his PCR proceedings, and further includes facts in his supporting memorandum which were never before the PCR trial court. The court interprets this as a request to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases.

Where, as here, a prisoner wishes to introduce new evidence in the absence of an evidentiary hearing, the evidentiary hearing requirements of 28 U.S.C. § 2254(e)(2) nevertheless apply. *Holland v. Jackson*, 124 S.Ct. 2736, 2738 (2004); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241-42 (9th Cir. 2005). Accordingly, if petitioner has failed to develop his claim in the state courts, he may only supplement the record if his claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) and (ii). He must also demonstrate that the facts underlying the claim are sufficient to establish by clear and convincing evidence

that no reasonable factfinder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

All of petitioner's newly presented information appears to be evidence which he could have presented to the PCR trial court had he exercised diligence in developing it, and petitioner does not argue otherwise. Consequently, he cannot meet the diligence requirement of § 2254(e)(2)(A)(ii).

Even if petitioner were able to meet the diligence requirement of § 2254(e)(2)(A)(ii), he could not establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of Felony Murder as required by 28 U.S.C. § 2254(e)(2)(B). Accordingly, the court will not consider the Declarations of petitioner, Robert Weppner, or Richard M. Kolbell. The court will also not consider the portions of petitioner's supporting memorandum containing facts not presented to the PCR trial court.

**III. <u>The Merits</u>**

Petitioner has two claims of ineffective assistance of counsel properly before the court for merits review. First, he claims that counsel improperly advised him that if he pled guilty, he would receive a sentence in the range of 12 or 13 years when, in reality, he received a 25-year sentence. Second, he alleges that counsel applied undue pressure upon him to enter a guilty plea by telling him that he would be put to death if he proceeded to trial.

According to petitioner, these failings of his trial attorneys rendered his guilty plea involuntary, unknowing, and unintelligent.

**A. <u>Standard of Review</u>**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

**B. <u>Analysis</u>**

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have

entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

The PCR trial court resolved petitioner's claims as follows:

> . . . This was an extremely favorable plea negotiation under the circumstances, particularly in light of the statements made by the Defendant of his involvement, which certainly could have been the basis for the jury finding him guilty of Aggravated Murder and imposing the death penalty.
>
> The Court will find as follows. First, that the plea was knowingly, voluntarily, and intelligently made. The Court will specifically find there was a written plea petition with the sentence in it. There was a period of some 7 months between the time that the petitioner entered his initial plea and then changed it. So the idea that this was somehow rushed is not supported by the facts. The plea was in fact very, very favorable to the Defendant. The Court engaged in a very through questioning of both the Defendant's counsel and the -- and the Defendant, the Petitioner here, and he was afforded the services of an interpreter. The Petitioner thoroughly and repeatedly acknowledged his guilt factually, and in fact still continues to provide information that supports this plea factually in deposition.
>
> The Petitioner is not credible about the 25 year minimum since he himself told the judge at the entry of plea about -- that he understood that there was a 25 year minimum.
>
> * * * * *
>
> Apparently the bottom line here is that Mr. Navarro is upset that he was not treated like Mr. Ruba[l]cava, who is apparently allowed to return to -- to Mexico without further charges. That doesn't have anything to do with the allegations of this post-conviction relief proceeding.

> So the court will find that counsel was not ineffective per the *Strickland vs. Washington* standard, and in fact it appears that counsel worked diligently to negotiate an extremely favorable plea agreement that ultimately saved the Petitioner's life. And that the Petitioner has failed to meet his burden of proof with regard to the factual allegations. The matter does involve Federal and State Constitutional issues, all of which have been presented and decided.

Respondent's Exhibit 125, pp. 7-9.

The PCR trial court clearly made a credibility determination with regard to petitioner's statement that his attorneys never told him he would be exposed to a 25-year sentence. Because petitioner provides no clear and convincing evidence to rebut this factual finding, this court accepts that credibility determination as true. See 28 U.S.C. § 2254(e)(1). As a result, there can be no finding of ineffective assistance with regard to petitioner's claim that his attorneys told him that he would only be sentenced to 12 or 13 years in prison.

As for petitioner's claim that his attorneys improperly influenced him to accept the plea, his PCR deposition testimony reveals that he felt pressured because his attorneys told him that the circumstances surrounding his involvement in Villareal's murder looked very bad, and that they frequently told him he could be sentenced to death if he elected to take the case to trial and was convicted. Respondent's Exhibit 121, p. 15. All of these are true statements leaving the court to conclude that the pressure to plead guilty was not the result of any improper conduct by petitioner's

attorneys, but stemmed from petitioner's own involvement in the crime as established by the totality of the evidence against him including his confession to authorities.

Although much of petitioner's PCR testimony focused on what he perceived to be disparate criminal treatment for Rubalcava, the PCR trial court correctly determined that Rubalcava's sentence (or lack thereof) has no relevance regarding whether petitioner's attorneys represented him effectively. For all of these reasons, counsels' performance did not fall below an objective standard of reasonableness.

Moreover, petitioner cannot demonstrate prejudice in this case because his involvement in the events that led to Villareal's murder are not disputed, something which, at a minimum, qualifies him for Felony Murder. Petitioner did face the possibility of a capital trial where he could have been sentenced to death or life without the possibility of parole. Given the totality of the evidence against him, under no circumstance would petitioner have chosen to forego pleading guilty to Felony Murder in order to expose himself to far greater punishment in a capital trial. Put another way, petitioner had nothing to gain by going to trial and everything to lose.

For these reasons, the PCR trial court's decision denying relief on these claims is neither contrary to nor an unreasonable application of, clearly established federal law.

**CONCLUSION**

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#22) is DENIED. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 2 day of November, 2010.

/s/Michael W. Mosman
Michael W. Mosman
United States District Judge